**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X

| | | |
|---|---|---|
| NICOLE FIDELIO, Individually and on behalf of all others similarly situated, | : | Case No.: 7:19-cv-10417-VB |
| | : | |
| Plaintiff, | : | |
| | : | |
| -against- | : | |
| | : | |
| iMOBILE, LLC and iMOBILE USA, LLC, | : | |
| | : | |
| Defendants. | : | |

-------------------------------------------------------------X


**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF CONDITIONAL**
**CERTIFICATION AND COURT-AUTHORIZED NOTICE**
**PURSUANT TO 29 U.S.C. § 216(b)**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT………………………………………………………..1

I.      PROCEDURAL HISTORY……………………………….…………......2

II.     PARTIES…………………………………………………………………2

        A.      Defendants ………………………………………………………2

        B.      Plaintiff and Opt-In Plaintiffs……………………………………3

III.    STATEMENT OF FACTS………………………………………………4

        A.      iMobile's Retail Store Hierarchy…………………………………4

        B.      iMobile Uniformly Misclassified All Salaried SMs Nationwide as
                Exempt from Overtime……………………………………………4

        C.      All SMs Performed Similar Job Duties……………………………5

        D.      iMobile Controls Its Stores Nationwide…………………………6

IV.     ARGUMENT…………………………………………………..……..…7

        A.      Court-Authorized Notice Is Fair, Efficient, and Advances the
                FLSA's Remedial Goals…………………………………………7

        B.      Expeditious Notice Is Necessary to Protect the Rights of SMs………9

        C.      Plaintiff Exceed the Low Burden for Court-Authorized Notice ……10

                1.      Plaintiff Faces a Low Standard of Proof at the Notice Stage…10

                2.      Plaintiff and Opt-Ins Establish They Are Similarly Situated
                        and Satisfy Their Low Burden..…………………………11

                3.      The Court Should Authorize Notice Without Regard to
                        Defendant's Defenses……………………………………16

        D.      The Court Should Approve Plaintiff's Proposed Notice, Consent
                and Process………………………………………………………18

                1.      The Court Should Authorize Distribution of Plaintiff's
                        Notice and Consent to Join………………………………18

**2.**    **The Court Should Order iMobile to Produce Contact Information for Members of the Collective**……………………..19

**3.**    **Distribution of Notice Via E-mail, Text, Website, and Posting Is Appropriate**……………………….…………………….……21

**4.**    **Reminder Notices Via U.S. Mail and E-mail Are Appropriate**………………………………………..………22

**CONCLUSION**………………………………………………………………....…23

## **TABLE OF AUTHORITIES**

**Cases**

*Agonath v. Interstate Home Loans Ctr., Inc., No. 17-cv-5267*,
   2019 U.S. Dist. LEXIS 36185 (E.D.N.Y. Mar. 6, 2019) ....................................................... 14

*Alonso v. Uncle Jack's Steakhouse, Inc.*,
   648 F. Supp. 2d 484 (S.D.N.Y. 2009) ....................................................... 18

*Arzeno v. Big B World, Inc., No. 15 Civ. 9724*,
   2016 U.S. Dist. LEXIS 94702 (S.D.N.Y. July 20, 2016) ....................................................... 20

*Bhumithanarn v. 22 Noodle Mkt. Corp., No. 14-cv-2625*,
   2015 WL 4240985 (S.D.N.Y. July 13, 2015) ....................................................... 21

*Braunstein v. E. Photo. Labs., Inc.*,
   600 F.2d 335 (2d Cir. 1975) ....................................................... 8, 9

*Cano v. Four M Food Corp., No. 08 Civ. 3005*,
   2009 U.S. Dist. LEXIS 7780 (E.D.N.Y. Feb. 3, 2009) ....................................................... 11

*Capsolas v. Pasta Res., Inc., No. 10 Civ. 5595*,
   2011 U.S. Dist. LEXIS 49926 (S.D.N.Y. May 9, 2011) ....................................................... 20

*Cardenas v. AAA Carting, No. 12 CV 7178*
   (VB), 2013 U.S. Dist. LEXIS 114982 (S.D.N.Y. Aug. 9, 2013) ....................................................... 11

*Cohen v. Lehrman Grp.*,
   686 F. Supp. 2d 317 (S.D.N.Y. 2010) ....................................................... 16

*Costello v. Kohl's Illinois, Inc., No., 13-CV-1359*,
   2014 U.S. Dist. LEXIS 124376 (S.D.N.Y. Sept. 4, 2014) ....................................................... 12

*Cruz v. Hook-Superx, LLC, No. 09 Civ. 7717*,
   2010 U.S. Dist. LEXIS 81021 (S.D.N.Y. Aug. 5, 2010) ....................................................... 10, 15

*Cuzco v. Orion Builders, Inc.*,
   477 F. Supp. 2d 628 (S.D.N.Y. 2007) ....................................................... 9

*Dalton v. Gem Fin. Servs., No. 15 Civ. 5636*,
   2016 U.S. Dist. LEXIS 88007 (E.D.N.Y. July 7, 2016) ....................................................... 10

*Damassia v. Duane Reade, Inc.*,
   250 F.R.D. 152 (S.D.N.Y. 2008) ....................................................... 6

*Damassia v. Duane Reade, Inc., No. 04 Civ. 8819*,
   2006 U.S. Dist. LEXIS 73090 (S.D.N.Y. Oct. 4, 2006) ....................................................... 16

*Diaz v. S & H Bondi's Dept. Store, No. 10 Civ. 7676*,
   2012 U.S. Dist. LEXIS 5683 (S.D.N.Y. Jan. 18, 2012) ....................................................... 13

*Fernandez v. Sharp Mgmt. Corp., No. 16 Civ. 0551,*
   2016 U.S. Dist. LEXIS 141916 (S.D.N.Y. Oct. 13, 2016) ................................... 10, 11, 16, 19

*Ferreira v. Modell's Sporting Goods, Inc., No. 11 Civ. 2395,*
   2012 U.S. Dist. LEXIS 100820 (S.D.N.Y. July 16, 2012) ............................... 12. 13

*Gjurovich v. Emmanuel's Marketplace, Inc.,*
   282 F. Supp. 2d 101 (S.D.N.Y. 2003) ................................................................... 16

*Grant v. Warner Music Gr. Corp., No. 13 Civ. 4449,*
   2014 U.S. Dist. LEXIS 65664 (S.D.N.Y. May 13, 2014) ................................... 8, 9

*Guttentag v. Ruby Tuesday, Inc., No. 12 Civ. 3041,*
   2013 U.S. Dist. LEXIS 82350 (S.D.N.Y. June 11, 2013) ..................................... 13

*Hamadou v. Hess Corp.,*
   915 F. Supp. 2d 651 (S.D.N.Y. 2013) ................................................................... 20

*Hernandez v. Bare Burger Dio Inc., No. 12 Civ. 7794,*
   2013 U.S. Dist. LEXIS 89254 (S.D.N.Y. June 25, 2013) ....................................... 9

*Hernandez v. Merrill Lynch & Co., Inc., No. 11 Civ. 8472,*
   2012 U.S. Dist. LEXIS 49822 (S.D.N.Y. Apr. 6, 2012) ....................................... 21

*Hoffmann v. Sbarro, Inc.,*
   982 F. Supp. 249 (S.D.N.Y. 1997) ......................................................................... 9

*Hoffmann-La Roche v. Sperling,*
   493 U.S. 165 (1989) ........................................................................................ 8, 19

*Indergit v. Rite Aid Corp., No. 08 Civ. 11364,*
   2010 U.S. Dist. LEXIS 60202 (S.D.N.Y. June 15, 2010) ........................... *passim*

*Irvine v. Destination Wild Dunes Mgmt., Inc.,*
   132 F.Supp.3d 707 (D.S.C. 2015) ................................................................... 21-22

*Jacob v. Duane Reade, Inc., No. 11 Civ. 0160,*
   2012 U.S. Dist. LEXIS 11053 (S.D.N.Y. Jan. 26, 2012) ........................... 12, 17, 20

*Jacobsen v. Stop & Shop Supermarket Co., No. 02 Civ. 5915,*
   2003 U.S. Dist. LEXIS 7988 (S.D.N.Y. May 15, 2003) ..................................... 16

*Karic v. Major Auto. Cos., Inc.,*
   799 F. Supp. 2d 219 (E.D.N.Y. 2011) ................................................................. 20

*Kim Man Fan v. Ping's on Mott, Inc., No. 13 Civ. 4939,*
   2014 U.S. Dist. LEXIS 54170 (S.D.N.Y. Apr. 14, 2014) ................................... 20

*Kim v. 511 E. 5th Street, LLC,*
   985 F. Supp. 2d 439 (S.D.N.Y. 2013) ................................................................. 15

*Liang v. J.C. Broadway Rest. Inc., No. 12 Civ. 1054*,
    2013 U.S. Dist. LEXIS 73976 (S.D.N.Y. May 23, 2013) ...................................................... 10

*Lloyd v. J.P. Morgan Chase & Co., No. 12 Civ. 2197*,
    2013 U.S. Dist. LEXIS 129102 (S.D.N.Y. Sept. 9, 2013) ...................................................... 17

*Lu v. Nails by Ann, Inc., No. 15 CV 8906*
    (VB), 2016 U.S. Dist. LEXIS 71331 (S.D.N.Y. June 1, 2016) ............................................... 11

*Lynch v. United Servs. Auto. Ass'n*,
    491 F. Supp. 2d 357 (S.D.N.Y. 2007) .................................................................................... 15

*Mark v. Gawker Media LLC, No. 13 Civ. 4347*,
    2014 U.S. Dist. LEXIS 155424 (S.D.N.Y. Nov. 3, 2014) ...................................................... 22

*Martin v. Sprint/united Mgmt. Co., No. 15–CV–5237*,
    2016 WL 30334 (S.D.N.Y. Jan. 4, 2016) ............................................................................... 21

*Mason v. Lumber Liquidators, Inc., No. 17-CV-4780*,
    2019 U.S. Dist. LEXIS 141026 (E.D.N.Y. Aug. 19, 2019) .................................................... 14

*Masson v. Ecolab, Inc., No. 04 Civ. 4488*,
    2005 U.S. Dist. LEXIS 18022 (S.D.N.Y. Aug. 17, 2005) ...................................................... 15

*Mongiove v. Nate's Corp., No. 15 Civ. 1024*,
    2016 U.S. Dist. LEXIS 16878 (S.D.N.Y. Feb. 9, 2016) ............................................ 18, 22-23

*Morris v. Lettire Constr. Corp.*,
    896 F. Supp. 2d 265 (S.D.N.Y. 2012) .............................................................................. 21, 22

*Myers v. Hertz Corp.*,
    624 F.3d 537 (2d Cir. 2010) ........................................................................................ *passim*

*In re Penthouse Executive Club Comp. Litig., No. 10 Civ. 1145*,
    2010 U.S. Dist. LEXIS 114743 (S.D.N.Y. Oct. 27, 2010) ............................................... 17-18

*Perkins v. S. New Eng. Tel. Co.*,
    669 F. Supp. 2d 212 (D. Conn. 2009) .................................................................................. 16

*Pippins v. KPMG LLP, No. 11 Civ. 0377*,
    2012 U.S. Dist. LEXIS 949 (S.D.N.Y. Jan. 3, 2012) ............................................................ 20

*Raniere v. Citigroup Inc.*,
    827 F. Supp. 2d 294 (S.D.N.Y. 2011) ................................................................................... 20

*Sanchez v. El Rancho Sports Bar Corp., No. 13 Civ. 5119*,
    2014 U.S. Dist. LEXIS 66234 ..................................................................................... *passim*

*Schaefer v. M&T Bank Corp.*,
    122 F. Supp. 3d 189 (S.D.N.Y. 2015) ......................................................................... 12, 14-15

*Shang Shing Chang v. Clean Air Car Serv. & Parking Corp. LLC, No. 15 Civ. 4385,*
 2016 U.S. Dist. LEXIS 114158 (E.D.N.Y. Aug. 25, 2016) .................................................. 15

*Sipas v. Sammy's Fishbox, Inc., No. 05 Civ. 10319,*
 2006 U.S. Dist. LEXIS 24318 (S.D.N.Y. Apr. 24, 2006) ..................................................... 15

*Varghese v. JP Morgan Chase & Co., No. 14 Civ. 1718,*
 2016 U.S. Dist. LEXIS 122428 (S.D.N.Y. Sept. 8, 2016) ...................................................... 9

*Winfield v. Citibank, N.A.,*
 843 F. Supp. 2d 397 (S.D.N.Y. 2012) .................................................................................. 18

*Xiao Ling Chen v. Xpresspa at Term. 4 JFK, LLC, No. 15 Civ. 1347,*
 2016 U.S. Dist. LEXIS 130645 (E.D.N.Y. Sept. 22, 2016) ............................................ 14, 20

*Zeledon v. Dimi Gyro LLC, No. 15 Civ. 7301,*
 2016 U.S. Dist. LEXIS 150526 (S.D.N.Y. Oct. 13, 2016) ...................................... 8, 9, 10, 17

**Statutes**

29 U.S.C. § 207 ........................................................................................................................ 12

29 U.S.C. § 216 ..................................................................................................................... 7, 10

**Other**

*Andrew C. Brunsden, Hybrid Class Actions, Dual Certification, and Wage Law Enforcement in
the Federal Courts*, 29 Berkeley J. Emp. & Lab. L. 269 (2008) ................................................. 23

## PRELIMINARY STATEMENT

The Court should grant Plaintiff's Motion and authorize distribution of notice to overtime exempt-classified Store Managers ("SMs") nationwide.  Defendants iMobile, LLC and iMobile USA, LLC (collectively "iMobile") unlawfully classified SMs, however variously titled, as exempt from the Fair Labor Standards Act ("FLSA") and failed to pay them overtime compensation for the hours they worked in excess of 40 in a workweek.  Through this Motion, Plaintiff seeks to protect the rights of SMs across the country whom iMobile has misclassified as exempt.  Sending court-approved notice of this action will allow SMs to decide whether to protect their rights by joining this case to recover unpaid wages.

Through Plaintiff's declaration and those of seven other SMs from four states, and Defendants' own corporate documents, Plaintiff more than meet the "minimal" burden of making "some showing" that Plaintiff and other employees "may be . . . similarly situated with respect to their job requirements and with regard to their pay provisions" and were "classified as exempt pursuant to a common policy or scheme."  *Myers v. Hertz Corp.,* 624 F.3d 537, 555 (2d Cir. 2010) (internal quotation marks omitted); *see Indergit v. Rite Aid Corp*., No. 08 Civ. 11364, 2010 U.S. Dist. LEXIS 60202, at *13 (S.D.N.Y. June 15, 2010) (granting court-authorized notice in similar "manager" misclassification case finding plaintiffs exceeded their "minimal" burden). iMobile's own corporate documents (including a common SM job listings) and the declarations of SMs establish that Plaintiff and other SMs performed the same essential job duties and were all classified as exempt.  At this early stage, this evidence is sufficient to meet the "modest factual showing" necessary to distribute notice and allow SMs nationwide to decide whether to protect their rights by joining this case.

## I.  PROCEDURAL HISTORY

On November 8, 2019, Plaintiff Nicole Fidelio filed a Complaint alleging that iMobile violated the FLSA and the New York Labor Law ("NYLL") by misclassifying her and other SMs at iMobile as exempt from their respective overtime pay requirements.  ECF No. 1.  In addition to the named Plaintiff, nine other SMs have joined this lawsuit by filing consents to join.  *See* ECF No. 27.  Together, the named Plaintiff and seven Opt-In Plaintiffs worked for iMobile in more than 12 different stores in New York, Colorado, Ohio, and Pennsylvania.[1]

## II.  THE PARTIES

### A.  Defendants

iMobile is a Sprint Authorized Retailer specializing in wireless communication services. *See* press release Defendant iMobile LLC provided to PR Newswire, June 7, 2018, https://www.prnewswire.com/news-releases/imobile-is-now-sprints-largest-authorized-retailer-300661925.html (last visited December 20, 2019).  With over 500 employees, Defendants operate more than 200 retail locations in 21 states.  *See* https://www.sprint.com/ storefronts/ sd/imobile/ bg/about-imobile/; https://www.sprint.com/ storefronts/bl/all-businesses/?bg =immobile (last visited December 20, 2019).  iMobile employed the Plaintiff, Opt-In Plaintiffs, and similarly situated SMs at its stores nationwide.  Complaint (ECF No. 1) at ¶¶ 12, 27.

---

[1] *See* Ex. A, Declaration of Nicole Fidelio ("Fidelio Decl.") at ¶ 2; Ex. B, Declaration of Austin Brantley ("Brantley Decl.") at ¶ 2; Ex. C, Declaration of Jared Griggs ("Griggs Decl.")  at ¶ 2; Ex. D, Declaration of Patrick Kershner ("Kershner Decl.") at ¶ 2; Ex. E, Declaration of Tiffany Spann ("Spann Decl.") at ¶ 2; Ex. F, Declaration of Robert Harr ("Harr Decl.") at ¶ 2; Ex. G, Declaration of Sherry Emrith ("Emrith Decl.") at ¶ 2; Ex. H, Declaration of Todd Coleman ("Coleman Decl.") at ¶  2.  All exhibits cited in this memorandum are attached to the Declaration of Camar R. Jones ("Jones Decl.").  In addition to these Declarants, two additional SMs have submitted consents to join this litigation.  *See* ECF Nos. 16 (Joyelle Davis) and 26 (Kyle Walsh).

### B.    Plaintiff and Opt-In Plaintiffs

Plaintiff Nicole Fidelio worked as an SM from approximately March 2017 to November 2017, at an iMobile store in Middletown, New York.  Ex. A, Fidelio Decl. at ¶ 2.  Opt-In Plaintiff Austin Brantley worked as an SM from approximately September 2018 to February 2019 at an iMobile store in Aurora, Colorado.  Ex. B, Brantley Decl. at ¶ 2.  Opt-In Plaintiff Jared Griggs worked as an SM from approximately May 2013 to December 2014 and again from approximately March 2016 to November 2016 at iMobile stores in Athens, Ohio, Zanesville, Ohio, and Pittsburgh, Pennsylvania.  Ex. C, Griggs Decl. at ¶ 2.  Opt-In Plaintiff Patrick Kershner worked as an SM from approximately February 2015 to January 2017, at iMobile stores in Selinsgrove, Pennsylvania and Munchy, Pennsylvania.  Ex. D, Kershner Decl. at ¶ 2.  Opt-In Plaintiff Tiffany Spann worked as an SM from approximately April 2014 to May 2017 at iMobile stores in Chillicothe, Ohio and Athens, Ohio.  Ex. E, Spann Decl. at ¶ 2.  Opt-In Plaintiff Robert Harr worked as an SM from approximately July 2016 to July 2018, at iMobile stores in Monroeville, Pennsylvania, Monaca, Pennsylvania, and Zanesville, Ohio.  Ex. F, Harr Decl. at ¶ 2.  Opt-In Plaintiff Sherry Emrith worked as an SM from approximately July 2015 to October 2016, at an iMobile store in Lawrence, New York.  Ex. G, Emrith Decl. at ¶ 2.  Opt-In Plaintiff Todd Coleman worked as an SM from approximately March 2017 to February 2019, at an iMobile store in Robinson, Pennsylvania.  Ex. H, Coleman Decl. at ¶ 2.  Notwithstanding the geographic dispersion of the iMobile locations in which they worked, as demonstrated below, iMobile treated Plaintiff and Opt-In Plaintiffs substantially similar with regard to the terms and conditions of their employment, assigning strict labor budgets to their stores, and subjected them all to the same policies and procedures.

III.    <u>STATEMENT OF FACTS</u>

A.    **iMobile's Retail Store Hierarchy**

iMobile operates its stores in a typical retail store hierarchy which is common across all iMobile locations.[2]  District Managers supervise multiple store locations.  *See, e.g.*, Ex. I, Retail District Manager job posting, Chandler, AZ ("Each DM will work within a predetermined geographic territory and will be assigned a specific store group that will be their responsibility."). Store Managers report to District Managers.[3]  *See Id.* (listing among District Manager Duties and Responsibilities, "Leadership and accountability for the successful development and management of Store Managers").  District Managers are also responsible for executing iMobile's "documented standards of operation."  *Id.*  All of the work assigned to SMs was either assigned by their DM or through corporate directives.[4]

B.  **iMobile Uniformly Misclassified All Salaried SMs Nationwide as Exempt from Overtime**

iMobile's SMs are similarly situated in that they are all subject to a unlawful common policy or scheme of being misclassified as FLSA-exempt  even though Defendant is aware that their primary duties are non-managerial work, regardless of location.[5]  At locations nationwide,

---

[2] *See* Ex. A, Fidelio Decl. at ¶ 3; Ex. B, Brantley Decl. at ¶¶ 3, 13; Ex. C, Griggs Decl. at ¶¶ 3, 13-15; Ex. D, Kershner Decl. at ¶¶ 3, 13; Ex. E, Spann Decl. at ¶¶ 3, 13-14; Ex. F, Harr Decl. at ¶¶ 3, 13-15; Ex. G, Emrith Decl. at ¶ 3; Ex. H, Coleman Decl. at ¶¶ 3, 13.

[3] *See* Ex. A, Fidelio Decl. at ¶ 3; Ex. B, Brantley Decl. at ¶ 3; Ex. C, Griggs Decl. at ¶ 3; Ex. D, Kershner Decl. at ¶ 3; Ex. E, Spann Decl. at ¶ 3; Ex. F, Harr Decl. at ¶ 3; Ex. G, Emrith Decl. at ¶ 3; Ex. H, Coleman Decl. at ¶ 3.

[4] *See* Ex. A, Fidelio Decl. at ¶ 9; Ex. B, Brantley Decl. at ¶ 9; Ex. C, Griggs Decl. at ¶ 9; Ex. D, Kershner Decl. at ¶ 9; Ex. E, Spann Decl. at ¶ 9; Ex. F, Harr Decl. at ¶ 9; Ex. G, Emrith Decl. at ¶ 9; Ex. H, Coleman Decl. at ¶ 9.

[5] *See* Ex. A, Fidelio Decl. at ¶¶ 5, 8-12; Ex. B, Brantley Decl. at ¶¶  5, 8-12; Ex. C, Griggs Decl. at ¶¶ 5, 8-12; Ex. D, Kershner Decl. at ¶¶ 5, 8-12; Ex. E, Spann Decl. at ¶¶ 5, 8-12; Ex. F, Harr Decl. at ¶¶ 5, 8-12; Ex. G, Emrith Decl. at ¶¶ 5, 8-12; Ex. H, Coleman Decl. at ¶¶ 5, 8-12.

SMs regularly worked more than 40 hours in a workweek for which they did not receive overtime compensation.[6]

### C.    All SMs Performed Similar Job Duties

Regardless of the location in which they work, SMs performed similar primary duties including customer service, making sales, troubleshooting devices, cleaning, merchandising, calling customers and answering calls from customers.[7]  SMs regularly work alone in their stores as the sole employee multiple days per week.[8]  Indeed, SMs' job duties are so similar that iMobile does not require any new training when a SM transfers from one store to another.  Ex. C, Griggs Decl. at ¶ 15; Ex. F, Harr Decl. at ¶ 15.  iMobile's own SM job listings identify common job duties and responsibilities for the SM position.  *See* Composite Ex. J, compilation of **identical** iMobile SM job listings from over 30 locations throughout the United States.  iMobile assigned specific individual sales goals that it expected SMs to attain.[9]

SMs' primary duties are not to manage other iMobile employees.[10]  SMs did not regularly hire, fire, promote or formally discipline other employees of iMobile, or to set their rates of pay.[11]  SMs' jobs also did not involve setting store policies or goals, or creating or developing

---

[6] *See* Ex. A, Fidelio Decl. at ¶¶ 5-7; Ex. B, Brantley Decl. at ¶¶ 5-7; Ex. C, Griggs Decl. at ¶¶ 5-7; Ex. D, Kershner Decl. at ¶¶ 5-7; Ex. E, Spann Decl. at ¶¶ 5-7; Ex. F, Harr Decl. at ¶¶ 5-7; Ex. G, Emrith Decl. at ¶¶ 5-7; Ex. H, Coleman Decl. at ¶¶ 5-7.

[7] *See* Ex. A, Fidelio Decl. at ¶¶ 8-13; Ex. B, Brantley Decl. at ¶¶ 8-12, 14; Ex. C, Griggs Decl. at ¶¶ 8-12, 16; Ex. D, Kershner Decl. at ¶¶ 8-12, 14; Ex. E, Spann Decl. at ¶¶ 8-12, 15; Ex. F, Harr Decl. at ¶¶ 8-12, 16; Ex. G, Emrith Decl. at ¶¶ 5, 8-13; Ex. H, Coleman Decl. at ¶¶ 5, 8-14.

[8] *See* Ex. A, Fidelio Decl. at ¶ 8; Ex. B, Brantley Decl. at ¶ 8; Ex. C, Griggs Decl. at ¶ 8; Ex. D, Kershner Decl. at ¶ 8; Ex. E, Spann Decl. at ¶ 8; Ex. F, Harr Decl. at ¶ 8; Ex. G, Emrith Decl. at ¶ 8; Ex. H, Coleman Decl. at ¶ 8.

[9] *See* Ex. C, Griggs Decl. at ¶ 9; Ex. D, Kershner Decl. at ¶ 9; Ex. E, Spann Decl. at ¶ 9; Ex. F, Harr Decl. at ¶ 9; Ex. G, Emrith Decl. at ¶ 9; Ex. H, Coleman Decl. at ¶ 9.

[10] *See* Ex. A, Fidelio Decl. at ¶¶ 10-12; Ex. B, Brantley Decl. at ¶¶ 10-12; Ex. C, Griggs Decl. at ¶¶ 10-12; Ex. D, Kershner Decl. at ¶¶ 10-12; Ex. E, Spann Decl. at ¶¶ 10-12; Ex. F, Harr Decl. at ¶¶ 10-12; Ex. G, Emrith Decl. at ¶¶ 10-12; Ex. H, Coleman Decl. at ¶¶ 10-12.

[11] *See* Ex. A, Fidelio Decl. at ¶¶ 10-11; Ex. B, Brantley Decl. at ¶¶ 10-11; Ex. C, Griggs Decl. at

new products or cellular service plans for iMobile stores.[12]  SMs did not have any input into setting the labor budgets for the stores to which they were assigned.[13]  Rather, iMobile makes these decisions from the corporate-level and closely controls how SMs perform their daily tasks through the use of restrictive, common corporate policies and procedures.[14]  The fact that SMs did not regularly perform managerial, exempt duties is not included to engage the merits of Defendant's classification, which is inappropriate at this stage.  Rather, their lack of managerial duties further highlights that SMs are similarly situated. *See Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152,160-61 (S.D.N.Y. 2008).

### D.    iMobile Controls Its Store Nationwide

These common policies and procedures apply in all stores and cover all facets of store operations—from customer service, to store hours of operation, to products and service plans sold, to promotions and marketing, to prices of products in stores, to processing sales on registers, to handling returns, and to addressing customer complaints.[15]  District Managers visit stores to ensure the stores are operating uniformly in accordance with iMobile's common policies and procedures.  *See* Ex. I, District Manager job posting ("The DM is expected to spend the vast majority of their time working in the stores within their assigned territories.").  All SMs

---

¶¶ 10-11; Ex. D, Kershner Decl. at ¶¶ 10-11; Ex. E, Spann Decl. at ¶¶ 10-11; Ex. F, Harr Decl. at ¶¶ 10-11; Ex. G, Emrith Decl. at ¶¶ 10-11; Ex. H, Coleman Decl. at ¶¶ 10-11.

[12] *See* Ex. A, Fidelio Decl. at ¶ 10; Ex. B, Brantley Decl. at ¶ 10; Ex. C, Griggs Decl. at ¶ 10; Ex. D, Kershner Decl. at ¶ 10; Ex. E, Spann Decl. at ¶ 10; Ex. F, Harr Decl. at ¶ 10; Ex. G, Emrith Decl. at ¶ 10; Ex. H, Coleman Decl. at ¶ 10.

[13] *Id.*

[14] *See* Ex. A, Fidelio Decl. at ¶¶ 9-12; Ex. B, Brantley Decl. at ¶¶ 9-12; Ex. C, Griggs Decl. at ¶¶ 9-12; Ex. D, Kershner Decl. at ¶¶ 9-12; Ex. E, Spann Decl. at ¶¶ 9-12; Ex. F, Harr Decl. at ¶¶ 9-12; Ex. G, Emrith Decl. at ¶¶ 9-12; Ex. H, Coleman Decl. at ¶¶ 9-12.

[15] *Id.*

nationwide are also subject to the same work rules in further support of this Court granting

Plaintiff's Motion for Conditional Certification.[16]

In addition, iMobile's corporate office establishes the amount of payroll money available

for its stores.[17]  iMobile does not provide sufficient payroll money to staff the stores with its

hourly employees and, therefore, SMs work long hours, frequently more than 50 hours per week,

to fill the void.[18]  SMs do not receive overtime pay and their long hours worked do not impact

the payroll budgets for the stores.[19]  iMobile also has a common policy to restrict the number of

hours that hourly employees work, including a restriction against overtime hours worked by

them.[20]

## IV.    **ARGUMENT**

### A.    Court-Authorized Notice Is Fair, Efficient, and Advances the FLSA's Remedial Goals

The FLSA authorizes private parties to bring suit "[o]n behalf of . . . themselves and other

employees similarly situated."  29 U.S.C. § 216(b). "The FLSA was designed 'to correct and as

---

[16] *See* Ex. A, Fidelio Decl. at ¶¶ 9-12; Ex. B, Brantley Decl. at ¶¶  9-13; Ex. C, Griggs Decl. at ¶¶ 9-15; Ex. D, Kershner Decl. at ¶¶ 9-13; Ex. E, Spann Decl. at ¶¶ 9-14; Ex. F, Harr Decl. at ¶¶ 9-15; Ex. G, Emrith Decl. at ¶¶ 9-12; Ex. H, Coleman Decl. at ¶ 9-12.

[17] *See* Ex. A, Fidelio Decl. at ¶ 10; Ex. B, Brantley Decl. at ¶ 10; Ex. C, Griggs Decl. at ¶ 10; Ex. D, Kershner Decl. at ¶ 10; Ex. E, Spann Decl. at ¶ 10; Ex. F, Harr Decl. at ¶ 10; Ex. G, Emrith Decl. at ¶ 10; Ex. H, Coleman Decl. at ¶ 10.

[18] *See* Ex. A, Fidelio Decl. at ¶ 7 (frequently over 60 hours per week); Ex. B, Brantley Decl. at ¶ 7 (55-65 hour per week); Ex. C, Griggs Decl. at ¶ 7 (45-65 hours per week); Ex. D, Kershner Decl. at ¶ 7 (55-65 hours per week); Ex. E, Spann Decl. at ¶ 7 (45-65 hours per week); Ex. F, Harr Decl. at ¶ 7 (frequently over 60 hours per week); Ex. G, Emrith Decl. at ¶ 7 (50-70 hours per week); Ex. H, Coleman Decl. at ¶ 7 (50-55 hours per week).

[19] *See* Ex. A, Fidelio Decl. at ¶¶ 5-7; Ex. B, Brantley Decl. at ¶¶  5-7; Ex. C, Griggs Decl. at ¶¶ 5-7; Ex. D, Kershner Decl. at ¶¶ 5-7; Ex. E, Spann Decl. at ¶¶ 5-7; Ex. F, Harr Decl. at ¶¶ 5-7; Ex. G, Emrith Decl. at ¶¶ 5-7; Ex. H, Coleman Decl. at ¶¶ 5-7.

[20] *See* Ex. A, Fidelio Decl. at ¶ 7; Ex. B, Brantley Decl. at ¶ 7; Ex. C, Griggs Decl. at ¶ 7; Ex. D, Kershner Decl. at ¶ 7; Ex. E, Spann Decl. at ¶ 7; Ex. F, Harr Decl. at ¶ 7; Ex. G, Emrith Decl. at ¶ 7; Ex. H, Coleman Decl. at ¶ 7.

rapidly as practicable to eliminate' the practice of employers failing to pay its employees proper wages." *Zeledon v. Dimi Gyro LLC*, No. 15 Civ. 7301, 2016 U.S. Dist. LEXIS 150526, at *12 (S.D.N.Y. Oct. 13, 2016) (citations omitted).

In furtherance of the FLSA's "broad remedial purpose," courts have the authority to notify potential opt-in plaintiffs that they may join an existing action early in the proceedings. *Braunstein v. E. Photo. Labs., Inc.*, 600 F.2d 335, 336 (2d Cir. 1975); *Myers,* 624 F.3d at 554 ("[D]istrict courts have 'discretion, in appropriate cases, to implement [§ 216(b)] . . . by facilitating notice to potential plaintiffs' of the pendency of the action and of their opportunity to opt-in as represented plaintiffs") (citation omitted).  "Indeed, because the three-year statute of limitations for an FLSA claim begins to run as soon as a non-named plaintiff opts-in to the litigation, courts routinely approve court-authorized notice in order to ensure that the rights of potential claimants do not expire during the discovery process."  *Grant v. Warner Music Gr. Corp.*, No. 13 Civ. 4449, 2014 U.S. Dist. LEXIS 65664, at * 9 (S.D.N.Y. May 13, 2014) (citing *Khamsiri v. George & Frank's Japanese Noodle Rest. Inc.*, No. 12 Civ. 265, 2012 U.S. Dist. LEXIS 76660, at *4 (S.D.N.Y. June 1, 2012) ("[C]ourt-authorized notice is appropriate[] to prevent erosion of claims due to the running statute of limitations . . . .")).

Collective actions provide workers an opportunity to "lower individual costs to vindicate rights by the pooling of resources," and enable the "efficient resolution in one proceeding of common issues of law and fact."  *Hoffmann-La Roche v. Sperling*, 493 U.S. 165, 170 (1989). Nationwide notice here will provide collective members with a single forum in which to determine whether iMobile's overtime policies are lawful.  *Indergit*, 2010 U.S. Dist. LEXIS 60202, at *32-33 (rejecting, as contrary to the stated purpose of the FLSA, employer's argument that executive exemption cases require individual analysis and are not appropriate for collective

action as such would "[waste] judicial resources by requiring courts to consider each individual plaintiff's claims in a separate lawsuit.").

### B.    Expeditious Notice Is Necessary to Protect the Rights of SMs

Employees must receive timely notice in order for the "intended benefits of the collective action . . . to accrue." *Cuzco v. Orion Builders, Inc.*, 477 F. Supp. 2d 628, 635 (S.D.N.Y. 2007). That is because the FLSA's statute of limitations runs until an employee files a consent form. *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 260 (S.D.N.Y. 1997) (Sotomayor, *J.*).  Time is of the essence because SMs' claims are diminished or extinguished every day.  *Grant*, 2014 U.S. Dist. LEXIS 65664, at *9.  Timely notice will curtail their continued erosion, *id.*, and is necessary to effectuate the FLSA's "broad remedial purpose." *Braunstein*, 600 F.2d at 336.  That is why courts in this district grant motions for conditional certification before discovery occurs based upon the plaintiffs' affidavits and some additional documents. *E.g., Varghese v. JP Morgan Chase & Co.,* No. 14 Civ. 1718, 2016 U.S. Dist. LEXIS 122428, at *2-3 (S.D.N.Y. Sept. 8, 2016) (granting pre-discovery nationwide conditional certification and permitting notice to thousands of assistant managers based upon declarations of plaintiffs and some corporate documents); *Sanchez v. El Rancho Sports Bar Corp.*, No. 13 Civ. 5119, 2014 U.S. Dist. LEXIS 66234, at *6-7 (granting motion for conditional certification based on two plaintiffs' affidavits); *see Hernandez v. Bare Burger Dio Inc.*, No. 12 Civ. 7794, 2013 U.S. Dist. LEXIS 89254, at *7 (S.D.N.Y. June 25, 2013) (observing that "courts in this circuit have routinely granted conditional collective certification based solely on the personal observations of one plaintiff's affidavit"); *see also Zeledon*, 2016 U.S. Dist. LEXIS 150526, at *15 (recognizing that courts grant pre-discovery conditional certification and notice).

9

### C.    Plaintiff Exceeds the Low Burden for Court-Authorized Notice

#### 1.    Plaintiff Faces a Low Standard of Proof at the Notice Stage

Courts in the Second Circuit employ a two-step approach when faced with a motion for court-authorized notice in an FLSA case. *Myers,* 624 F.3d at 554-55; *Sanchez*, 2014 U.S. Dist. LEXIS 66234, at *3-4. At the initial notice stage, plaintiffs must establish that other employees "may be similarly situated" to them. *Myers,* 624 F.3d at 555 (internal quotation marks omitted); *Liang v. J.C. Broadway Rest. Inc.*, No. 12 Civ. 1054, 2013 U.S. Dist. LEXIS 73976, at *3 (S.D.N.Y. May 23, 2013) (at this first phase, the "court's task is only to conclude whether there may be other similarly situated workers."). "At this preliminary stage, the focus of the inquiry 'is not on whether there has been an actual violation of law but rather on whether the proposed plaintiffs are similarly situated under 29 U.S.C. § 216(b) with respect to their allegations that the law has been violated." *Dalton v. Gem Fin. Servs*., No. 15 Civ. 5636, 2016 U.S. Dist. LEXIS 88007, at *4 (E.D.N.Y. July 7, 2016) (citations omitted).

"Plaintiffs' burden at this stage is minimal," and plaintiffs need only make a "modest factual showing" that they and others are similarly situated. *Sanchez*, 2014 U.S. Dist. LEXIS 66234, at *4; *Myers,* 624 F.3d at 555 (same); *Fernandez v. Sharp Mgmt. Corp*., No. 16 Civ. 0551, 2016 U.S. Dist. LEXIS 141916, at *5-6 (S.D.N.Y. Oct. 13, 2016) (standard for conditional certification is not "stringent" and requires only a "modest factual showing") (citations omitted); *Zeledon*, 2016 U.S. Dist. LEXIS 150526, at *16 (recognizing plaintiffs' "fairly lenient" standard for conditional certification) (citations omitted); *Cruz v. Hook-Superx, LLC*, No. 09 Civ. 7717, 2010 U.S. Dist. LEXIS 81021, at *7-8 (S.D.N.Y. Aug. 5, 2010) (noting "lenient" standard for 29 U.S.C. § 216(b) court-authorized notice).

In an FLSA exemption case, plaintiffs can meet their burden merely "by making some showing that 'there are other employees . . . who are similarly situated with respect to their job requirements and with regard to their pay provisions,' on which the criteria for many FLSA exemptions are based, who are classified as exempt pursuant to a common policy or scheme." *Myers,* 624 F.3d at 555 (quoting *Morgan v. Family Dollar Stores*, 551 F.3d 1233, 1259 (11th Cir. 2008)).  Plaintiffs are not required to prove "that the prospective class members all performed the same duties."  *Cano v. Four M Food Corp.*, No. 08 Civ. 3005, 2009 U.S. Dist. LEXIS 7780, at *20 (E.D.N.Y. Feb. 3, 2009) (granting motion for court-authorized notice and collecting cases).

It is not until "[a]fter plaintiffs have opted in and after discovery, [when] courts conduct a more stringent 'second tier' analysis upon a full record to decide whether the additional plaintiffs are similarly situated to the original plaintiffs.  This exercise takes place at what is often referred to as the 'decertification' stage."  *Indergit*, 2010 U.S. Dist. LEXIS 60202, at *15 (citing authorities); *Fernandez*, 2016 U.S. Dist. LEXIS 141916, at *6  ("In the second stage of the framework, where the court has a 'fuller record' to work with, a defendant can move to decertify if discovery reveals that the claimants are not similarly situated.").

This Court has applied these standards in authorizing notice to members of FLSA collectives and emphasized the "modest" burden for plaintiffs at this stage.  *E.g.*, *Lu v. Nails by Ann, Inc.*, No. 15 CV 8906 (VB), 2016 U.S. Dist. LEXIS 71331, *6-7 (S.D.N.Y. June 1, 2016) (Briccetti, *J.*); *Cardenas v. AAA Carting*, No. 12 CV 7178 (VB), 2013 U.S. Dist. LEXIS 114982, *5 (S.D.N.Y. Aug. 9, 2013) (Briccetti, *J.*).

## 2.  Plaintiff and Opt-Ins Establish They Are Similarly Situated and Satisfy Their Low Burden

This lawsuit challenges a straightforward, uniform iMobile policy – its decision to avoid paying overtime to hourly employees by misclassifying SMs as exempt from the FLSA's

11

overtime requirements and the unlawful failure to pay them overtime despite SMs' non-managerial primary duties, as required by 29 U.S.C. § 207(a)(1).  iMobile maintains a common policy not to pay overtime wages to all SMs nationwide.  [cite].  iMobile also has a common policy to provide limited money for payroll, require its stores not to spend more than the payroll money provided, eliminate overtime wages for hourly employees, and to cut staff to avoid excess payroll spending.  [cite].  These practices resulted in SMs working overtime hours and performing non-managerial tasks.  These common, unlawful policies tie Plaintiffs' claims to a policy or practice that affected SMs nationwide and conditional certification is proper.  Costello v. Kohl's Illinois, Inc., No., 13-CV-1359, 2014 U.S. Dist. LEXIS 124376, at *19 (S.D.N.Y. Sept. 4, 2014) (nationwide conditional certification granted where retail managers' testimony provided "a substantive theory — budget and staffing cuts that resulted in [retail managers] performing non-managerial tasks — to tie Plaintiffs' claims to a policy or practice that affected [retail managers] nationwide."); Indergit, 2010 U.S. Dist. LEXIS 60202, at *22-23 (conditionally certifying nationwide collective action based on affidavits from retail managers testifying that they were "victims of a corporate-wide policy that left store managers with fewer overtime hours in their labor budget than was necessary and forced them to perform mainly non-exempt duties."); accord also  Myers, 624 F.3d at 555; e.g., Varghese, 2016 U.S. Dist. LEXIS 122428; Schaefer v. M&T Bank Corp., 122 F. Supp. 3d 189 (S.D.N.Y. 2015); Jacob v. Duane Reade, Inc., No. 11 Civ. 0160, 2012 U.S. Dist. LEXIS 11053 (S.D.N.Y. Jan. 26, 2012); Indergit, 2010 U.S. Dist. LEXIS 60202; Ferreira v. Modell's Sporting Goods, Inc., No. 11 Civ. 2395, 2012 U.S. Dist. LEXIS 100820 (S.D.N.Y. July 16, 2012).

Plaintiff's evidence of eight declarations from more than 12 different store locations, more than 30 identical Retail Store Manager job postings, and the District Manager job positing,

has exceeded the "minimal" burden to show that they and other current and former SMs "may be" similarly situated. *Sanchez*, 2014 U.S. Dist. LEXIS 66234, at *4; *Myers*, 624 F.3d at 555. The Plaintiff and seven Opt-ins, who worked at over 12 different locations nationwide (various stores in New York, Colorado, Ohio, and Pennsylvania), all testify that they primarily performed the same job duties and responsibilities and worked more than 40 hours as SMs without receiving overtime wages. *Supra* at pp. 5-7. It is undisputed that iMobile maintained common policies not to pay overtime to salaried exempt SMs nationwide and to limit payroll money to stores to boost corporate profits. *Supra* at p. 7. All salaried exempt SMs are subject to the same or similar job description, corporate policies, and work rules regardless of their location. *Supra* at pp. 4-7.

Plaintiff's evidence is similar to other cases in which nationwide conditional certification was granted. *E.g., Varghese*, 2016 U.S. Dist. LEXIS 122428, at *2-3 (plaintiffs' declarations and corporate documents supported pre-discovery nationwide notice to thousands of assistant managers in similar misclassification case); *Ferreira*, 2012 U.S. Dist. LEXIS 100820, at *6-7 (nationwide conditional certification in misclassification case based on single plaintiff's testimony and corporate documents and testimony); *Diaz v. S & H Bondi's Dept. Store,* No. 10 Civ. 7676, 2012 U.S. Dist. LEXIS 5683, at *6 (S.D.N.Y. Jan. 18, 2012) ("Courts have found employees 'similarly situated' for purposes of the FLSA where they . . . worked at different locations, as long as they were subject to the same allegedly unlawful policies. The fact that employees worked at different locations does not mean that they are not entitled to notice of this lawsuit."); *Guttentag v. Ruby Tuesday, Inc.*, No. 12 Civ. 3041, 2013 U.S. Dist. LEXIS 82350 (S.D.N.Y. June 11, 2013) (granting certification of a nationwide collective based solely on declarations and depositions of plaintiffs covering eight store locations in four states); *Gray v.*

*Wireless Vision, LLC*, No. 1:15-cv-4264-AT, Docket No. 47, (N.D. Ga. December 14, 2016) (granting conditional certification of a nationwide collective of wireless store assistant managers based on deposition testimony of two assistant managers and declarations from four other assistant managers).

Quite simply, "courts in previous actions have granted collective action certification based on similar or even thinner evidence than that presented by Plaintiffs in the instant case." *Xiao Ling Chen v. Xpresspa at Term. 4 JFK, LLC*, No. 15 Civ. 1347, 2016 U.S. Dist. LEXIS 130645, at *14 (E.D.N.Y. Sept. 22, 2016) (in misclassification case, court granted conditional certification for all of defendant's multi-state airport locations based upon affidavits from employees who worked at six locations in five different states); *accord, e.g.*, *Mason v. Lumber Liquidators, Inc*., No. 17-CV-4780, 2019 U.S. Dist. LEXIS 141026, at *14-15 (E.D.N.Y. Aug. 19, 2019) (affirming magistrate's order conditionally certifying nationwide store manager collective action based on declarations, common job description, and common policy not to pay overtime wages to store managers); *Agonath v. Interstate Home Loans Ctr., Inc*., No. 17-cv-5267, 2019 U.S. Dist. LEXIS 36185, at *13-14 (E.D.N.Y. Mar. 6, 2019) ("Here, the Declarations . . . assert that [defendant] had a uniform policy of withholding overtime compensation from its employees and support those allegations with individualized testimony as to their personal compensation experiences. See generally Plfs.' Decls.  Accordingly, Plaintiffs have satisfied the lenient standard applicable at this stage, and the Court conditionally certifies this matter as an FLSA collective action . . . ."); *Varghese,* 2016 U.S. Dist. LEXIS 122428, at *2-3 (granting pre-discovery nationwide conditional certification and permitting notice to thousands of assistant managers based upon declarations of plaintiffs and some corporate documents showing uniform treatment nationwide); *Schaefer*, 122 F. Supp. 3d at 195 (conditional certification granted based

on declarations from four plaintiffs and some corporate documents, holding that "courts routinely approve court-authorized notice in order to ensure that the rights of potential claimants do not expire during the discovery process."); *Shang Shing Chang v. Clean Air Car Serv. & Parking Corp. LLC*, No. 15 Civ. 4385,  2016 U.S. Dist. LEXIS 114158, at *5-6 (E.D.N.Y. Aug. 25, 2016) (granting conditional certification based upon seven affidavits, but no other evidence, including no job descriptions or other corporate documents); *Cruz*, 2010 U.S. Dist. LEXIS 81021, at *7-8 (granting nationwide conditional certification to thousands of CVS assistant managers nationwide based upon declarations from assistant managers who worked in nine states and that they performed non-exempt duties, worked unpaid overtime hours, were all paid a salary, and did not perform many managerial duties);  *Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 369 (S.D.N.Y. 2007) (conditional certification granted because, among other reasons, all plaintiffs were subject to same job descriptions); *Sipas v. Sammy's Fishbox, Inc.*, No. 05 Civ. 10319, 2006 U.S. Dist. LEXIS 24318, at *9 (S.D.N.Y. Apr. 24, 2006) (allowing court-authorized notice on basis of three affidavits and complaint's allegations); *Masson v. Ecolab, Inc.*, No. 04 Civ. 4488, 2005 U.S. Dist. LEXIS 18022, at *40-41 (S.D.N.Y. Aug. 17, 2005) (same on the basis of affidavits from three opt-in plaintiffs); *Kim v. 511 E. 5th Street, LLC*, 985 F. Supp. 2d 439, 449 (S.D.N.Y. 2013) (declaration of plaintiff and one opt-in, "together, are more than sufficient to satisfy [plaintiff's] minimal burden at the preliminary certification stage").

Given Plaintiff's substantial evidence showing numerous similarities of the SM position, the Court should find that Plaintiff satisfied their burden and grant this Motion.  *Sanchez*, 2014 U.S. Dist. LEXIS 66234, at *4.

### 3.    The Court Should Authorize Notice Without Regard to Defendant's Defenses

iMobile may claim that their exemption defenses preclude a collective action because they require "fact-intensive inquiries" of the tasks that SMs performed.  "This argument ignores the purposes of the FLSA."  *Indergit*, 2010 U.S. Dist. LEXIS 60202, at *32.  "Just because the [exemption] inquiry is fact-intensive does not preclude a collective action where plaintiffs share common job traits."  *Morgan*, 551 F.3d at 1263.  "[S]ection 216(b) clearly applies to misclassification claims as well as other FLSA claims.  Had Congress intended to exclude misclassification claims from collective actions, it would have done so."  *Perkins v. S. New Eng. Tel. Co.,* 669 F. Supp. 2d 212, 218 (D. Conn. 2009).

Accordingly, courts in this district have roundly rejected the argument that the fact-intensive nature of exemption defenses precludes court-authorized notice.  *Cohen v. Lehrman Grp.*, 686 F. Supp. 2d 317, 329-30 (S.D.N.Y. 2010) (collecting cases); *Damassia v. Duane Reade, Inc.*, No. 04 Civ. 8819, 2006 U.S. Dist. LEXIS 73090, at *15, *18-19 (S.D.N.Y. Oct. 4, 2006) ("In opposing court-authorized notice, defendant dedicates a substantial portion of its briefs to the misplaced argument that plaintiffs' claims fail on the merits. . . .  [C]ourts need not resolve the merits in order to find plaintiffs and potential opt-in plaintiffs similarly situated for purposes of authorizing notice."); *Indergit*, 2010 U.S. Dist. LEXIS 60202, at *25 ("[t]he merit of the underlying FLSA claim is not the issue that a court must resolve in deciding whether to grant a motion for court-authorized notice. . . ."); *Fernandez*, 2016 U.S. Dist. LEXIS 141916, at *6 ("In ascertaining whether potential opt-in plaintiffs are similarly situated, courts should not weigh the merits of the underlying claims."); *Sanchez*, 2014 U.S. Dist. LEXIS 66234, at *9 ("The Court's role at this stage, however, is not to decide the merits of Plaintiffs' claims.").[21]  As

---

[21] *Accord, e.g.*, *Cohen*, 686 F. Supp. 2d at 317 (court granted court-authorized notice in case

in these cases, Defendant's exemption defenses are no obstacle to granting this Motion.  *Lloyd v. J.P. Morgan Chase & Co*., No. 12 Civ. 2197, 2013 U.S. Dist. LEXIS 129102, at *12-13 (S.D.N.Y. Sept. 9, 2013) ("overtime [exemption] is a merits issue; the law is clear that courts should not weigh the merits at this point in the litigation."); *Fernandez*, 2016 U.S. Dist. LEXIS 141916, at *13-14 (rejecting the contention that some class members may be dissimilar because they are exempt as a merits-based inquiry that would not preclude conditional certification). This is because "the purpose of this first stage is merely to determine *whether* 'similarly situated' plaintiffs do in fact exist."  *Myers,* 624 F.3d at 555 (emphasis in original).  Plaintiff does not need to prove that iMobile's policy of not paying SMs overtime is unlawful to warrant conditional certification; rather, it is Defendant's burden to establish the exemption defense.  *See id*.; *Lloyd*, 2013 U.S. Dist. LEXIS 129102, at *12-13; *Sanchez*, 2014 U.S. Dist. LEXIS 66234, at *9.

iMobile may also argue that the court should resolve factual disputes or make credibility determinations.  Any such argument is contrary to law.  "[A]t this initial procedural stage, the Court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations."  *Zeledon*, 2016 U.S. Dist. LEXIS 150526, at *17 (quotation and citations omitted).  While iMobile may submit competing affidavits in opposition to this Motion, courts do not "weigh Plaintiffs' and Defendants' competing testimony at this phase of the litigation."  *Jacob,* 2012 U.S. Dist. LEXIS 11053, at *22; *In re Penthouse Executive Club*

---

involving misclassified research associates); *Chowdhury v. Duane Reade, Inc.*, No. 06 Civ. 2295, U.S. Dist. LEXIS 73853, at *22 (S.D.N.Y. Oct. 2, 2007) (same in case involving misclassified assistant drug store managers); *Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 101, 105 (S.D.N.Y. 2003) (same in case involving misclassified supermarket workers); *Jacobsen v. Stop & Shop Supermarket Co.*, No. 02 Civ. 5915,  2003 U.S. Dist. LEXIS 7988, at *11-12 (S.D.N.Y. May 15, 2003) (same in case involving misclassified supermarket managers).

*Comp. Litig.*, No. 10 Civ. 1145, 2010 U.S. Dist. LEXIS 114743, at *12 (S.D.N.Y. Oct. 27, 2010)

(defendants' submission of competing affidavits "amounts to a premature request to make

credibility determinations and factual findings, something that is inappropriate at the notice

stage."); *Alonso v. Uncle Jack's Steakhouse, Inc.*, 648 F. Supp. 2d 484, 488 (S.D.N.Y. 2009)

(defendants' contradictory affidavits were insufficient "to prevent Plaintiffs from meeting their

'minimal' burden of a 'modest factual showing' on its motion for conditional certification under

FLSA."); *Winfield v. Citibank, N.A.*, 843 F. Supp. 2d 397, 407 n.6 (S.D.N.Y. 2012) ("[c]ourts in

this Circuit regularly conclude that [defendant's] declarations do not undermine the plaintiffs'

showing in the first stage of the conditional certification process.").  To put it most directly, "[a]n

objection at this preliminary stage to conditional classification based upon individual employees'

asserted different circumstances is clearly part of the FLSA defense bar's play book, but it has

not found favor with the courts, and it does not persuade this Court in this case.  This is the sort

of issue that is more properly considered on a more complete record."  *Mongiove v. Nate's Corp.*,

No. 15 Civ. 1024, 2016 U.S. Dist. LEXIS 16878, at *14 (S.D.N.Y. Feb. 9, 2016) (citations

omitted).

**D.    The Court Should Approve Plaintiff's Proposed Notice, Consent and Process**

**1.    The Court Should Authorize Distribution of Plaintiff's Notice and Consent to Join**

The Court should authorize distribution of Plaintiff's proposed notice, consent to join

form, and reminder postcard, attached as Exhibit K to the Jones Decl., to all SMs employed at

iMobile who were classified as exempt at any time since three years prior to the filing of this

action:  November 8, 2016.[22]  District courts have discretion to implement the collective action

---

[22] Plaintiff's Counsel and Defendants' Counsel have preliminarily discussed an agreed notice
process and form of notice in the event the Court grants this Motion.  The parties will continue
their discussions and provide the Court with a joint statement as to any areas of agreement they

provision of the FLSA "by facilitating notice to potential plaintiffs" of the pendency of the action and of their opportunity to join it. *Myers*, 624 F.3d at 554 (citing *Hoffman-LaRoche*, 493 U.S. at 169). Plaintiff's proposed notice, consent form, and reminder postcard explain the nature of the claims in the lawsuit and collective action members' rights in simple, non-argumentative language. The Court should approve these documents and authorize Plaintiff to send them. *See Hoffmann-La Roche*, 493 U.S. at 172; *Waggoner v. U.S. Bancorp et al.*, No. 14 Civ. 01626-SL (N.D. Ohio July 15, 2015) (text order entered approving notice to co-managers substantially similar to the proposed notice).

### 2. The Court Should Order iMobile to Produce Contact Information for Members of the Collective

The Court should order iMobile to provide Plaintiff with a computer-readable list of names, last known addresses, telephone numbers, work and personal e-mail addresses, work locations, and dates of employment for all persons employed by Defendants as exempt SMs at iMobile stores nationwide from November 8, 2016 to the date iMobile reclassified SMs to non-exempt status. Courts routinely order production of such information to facilitate distribution of notice in FLSA cases. *See, e.g., Fernandez*, 2016 U.S. Dist. LEXIS 141916, at *19 (ordering defendant to "produce the names, phone numbers, email addresses and last known mailing addresses . . . during the three-year period preceding the date of the filing of this complaint."); *Shang Shing Chang v. Clean Air Car Serv. & Parking, LLC*, No. 15 Civ. 4385, 2016 U.S. Dist. LEXIS 114158, at *8 (S.D.N.Y. Aug. 25, 2016) ("the Court directs defendants to provide plaintiffs with a list of the names, addresses, telephone numbers, email addresses, and dates of employment for all potential class members employed by them for the relevant time period.");

---

may ultimately reach.

*Hamadou v. Hess Corp.*, 915 F. Supp. 2d 651, 669 (S.D.N.Y. 2013) (requiring defendants supply a "computer-readable list containing all potential collective action members' names, last known mailing addresses, last known telephone numbers, work locations, e-mail addresses, dates of employment, dates of birth, and last four digits of the individuals' Social Security numbers."); *Karic v. Major Auto. Cos., Inc.*, 799 F. Supp. 2d 219, 229 (E.D.N.Y. 2011) (ordering discovery of the name, last known mailing address, last known telephone number, work location, and dates of employment for all similarly situated employees); *Varghese*, 2016 U.S. Dist. LEXIS 122428, at *25-27 (same); *Jacob*, 2012 U.S. Dist. LEXIS 11053, at *27-29 (same); *Pippins v. KPMG LLP*, No. 11 Civ. 0377, 2012 U.S. Dist. LEXIS 949, at *40 (S.D.N.Y. Jan. 3, 2012) (same); *Raniere v. Citigroup Inc.*, 827 F. Supp. 2d 294, 327 (S.D.N.Y. 2011) (same).

The Court should also order iMobile to provide Social Security Numbers for all SMs for whom a notice is returned undeliverable by U.S. Mail, as this information is the most efficient tool to locate current addresses for SMs who have relocated since their employment with iMobile. *See Capsolas v. Pasta Res., Inc.*, No. 10 Civ. 5595, 2011 U.S. Dist. LEXIS 49926, at *13-14 (S.D.N.Y. May 9, 2011) ("defendants will produce employees['] social security numbers only in the event that notice sent to the address provided by defendants is returned as undeliverable"); *Xiao Ling Chen*, 2016 U.S. Dist. LEXIS 20003, at *30 (requiring production of social security numbers).

Finally, the Court should set a notice period of 90 days. *See Arzeno v. Big B World, Inc.*, No. 15 Civ. 9724, 2016 U.S. Dist. LEXIS 94702, at *4 (S.D.N.Y. July 20, 2016); *Kim Man Fan v. Ping's on Mott, Inc.*, No. 13 Civ. 4939, 2014 U.S. Dist. LEXIS 54170, at *13 (S.D.N.Y. Apr. 14, 2014) (authorizing 90-day notice period); *Varghese*, 2016 U.S. Dist. LEXIS 122428, at *25 n.6 (same).

3.      **Distribution of Notice Via E-mail, Text, Website, and Posting Is Appropriate**

In addition to U.S. Mail, the Court should order that notice be distributed electronically by e-mail and text message.  Email and text notice is consistent with "the goals of the notice: to make as many potential plaintiffs as possible aware of this action and their right to opt in. . . ." *Morris v. Lettire Constr. Corp.*, 896 F. Supp. 2d 265, 273 (S.D.N.Y. 2012).  Computer and smartphone use have dramatically accelerated, and texting, cellphones and email are the most commonly used modes of communication. http://www.gallup.com/poll/179288/new-era-communication-americans.aspx (last visited December 20, 2019).  Courts routinely hold that, given the increasingly mobile nature of our society,[23] e-mail and text are appropriate methods for distributing notice in addition to U.S. Mail.  *E.g.*, *Sanchez*, 2014 U.S. Dist. LEXIS 66234, at *23; *Hernandez v. Merrill Lynch & Co., Inc.*, No. 11 Civ. 8472, 2012 U.S. Dist. LEXIS 49822, at *22 (S.D.N.Y. Apr. 6, 2012) (". . . in this day of electronic communication, courts have authorized defendants to provide e-mail address[es] as well."); *Martin v. Sprint/united Mgmt. Co.*, No. 15–CV–5237, 2016 WL 30334, at *19 (S.D.N.Y. Jan. 4, 2016) (granting text message notice due to high turnover rate among employees); *Bhumithanarn v. 22 Noodle Mkt. Corp.*, No. 14-cv-2625, 2015 WL 4240985, at *5 (S.D.N.Y. July 13, 2015) ("[G]iven the high turnover characteristic of the restaurant industry, the Court finds that notice via text message is likely to be a viable and efficient means of communicating with many prospective members of this collective action."); *Irvine v. Destination Wild Dunes Mgmt., Inc.*, 132 F.Supp.3d 707, 711 (D.S.C. 2015) ("The request that notice be distributed via direct mail, email and text messaging appears eminently

---

[23] Each year about 36 million Americans move residences… and [] quite often take their cell phone numbers with them.  http://www.pewresearch.org/2016/08/01/moving-without-changing-your-cellphone-number-a-predicament-for-pollsters/ (last visted December 20, 2019).

reasonable to the Court."). Here, notice by text message is particularly compelling. The entire putative collective includes people who have worked in cellular phone retail stores in recent years. They are all highly skilled in using cellular phones and are incredibly familiar with texting as a primary mode of communication.

Furthermore, the Court should also authorize the creation of a secure interactive website for the purpose of providing notice and facilitating SMs' ability to complete the consent to join process. Courts in this district have approved such websites to facilitate notice and electronic submission of consent forms. *See Mark v. Gawker Media LLC*, No. 13 Civ. 4347, 2014 U.S. Dist. LEXIS 155424, at *7-10 (S.D.N.Y. Nov. 3, 2014) (granting plaintiff's request to distribute notice, among other means, via two stand-alone websites containing a notice and consent form); *Varghese*, 2016 U.S. Dist. LEXIS 122428, at *26 (same); *Amador v. Morgan Stanley*, No. 11 Civ. 4326 (S.D.N.Y. Feb. 27, 2013) (ECF Nos. 78-79) (allowing electronic submissions of consents to join).

### 4.    Reminder Notices Via U.S. Mail and E-mail Are Appropriate

The Court should allow Plaintiff to send a reminder via U.S. mail and e-mail half-way through the notice period to all SMs who have not yet submitted a Consent to Join form. *See* Proposed Reminder Notice, attached as Exhibit K to the Jones Decl. A reminder notice promotes the FLSA's broad remedial purpose and the goals of court-authorized notice. *See Morris*, 896 F. Supp. 2d at 275; *Varghese*, 2016 U.S. Dist. LEXIS 122428, at *28 ("With respect to a reminder notice, '[g]iven that notice under the FLSA is intended to inform as many potential plaintiffs as possible of the collective action and their right to opt-in, . . . a reminder notice is appropriate.'") (quoting *Chhab v. Darden Rests., Inc.,* No. 11 Civ. 8345 NRB, 2013 U.S. Dist. LEXIS 135926, at *51 (S.D.N.Y. Sept. 20, 2013)); *see also Mongiove*, 2016 U.S. Dist. LEXIS

16878, at *22; Sanchez, 2014 U.S. Dist. LEXIS 66234, at *24.   It is well documented that

people often disregard collective action notices.  (*See* Andrew C. Brunsden, *Hybrid Class

Actions, Dual Certification, and Wage Law Enforcement in the Federal Courts*, 29 Berkeley J.

Emp. & Lab. L. 269, 295 (2008)).  iMobile has no reason to oppose a reminder mailing other

than that it may increase the participation rate, which is not a compelling reason and contrary to

the remedial purpose of the FLSA.  Plaintiff will bear the cost of the reminder mailing, and it

will not change the duration of the notice period.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully request that the Court: (1) order that a

Court-authorized notice of this lawsuit be sent to the proposed FLSA collective; (2) order

iMobile to produce, within 14 days of the Court's Order granting this Motion, a computer-

readable data file containing the names, addresses, telephone numbers, dates of employment,

locations of employment, and work and personal e-mail addresses for all potential collective

action members; (3) order iMobile to produce Social Security numbers for potential collective

action members for whom a notice is returned as undeliverable; (4) authorize the issuance of

Plaintiff's proposed notice to all potential collective action members; (5) order that notice and

the Consent to Join form be sent to collective members by e-mail and U.S. Mail; (6) require

Defendants to post the notice in all iMobile stores; (7) authorize the creation of an interactive

internet website providing notice of this action and serving as a portal allowing potential

collective action members to electronically consent to join this action; (8) set the notice period at

90 days; and (9) authorize Plaintiff to mail a reminder notice and send a reminder e-mail to all

FLSA collective action members who have not yet opted-in to this matter within 45 days of the

issuance of the first notice.

Dated:  New York, New York
       December 27, 2019

Respectfully submitted,

/s/Michael J. Palitz_____
Michael J. Palitz
**SHAVITZ LAW GROUP, P.A.**
830 3rd Avenue, 5th Floor
New York, New York 10022
Tel:    (800) 616-4000
Fax:   (561) 447-8831

Gregg I. Shavitz*
Camar R. Jones*
Alan L. Quiles*
**SHAVITZ LAW GROUP, P.A.**
951 Yamato Road, Suite 285
Boca Raton, Florida 33432
Tel:    (561) 447-8888
Fax:   (561) 447-8831

***Attorneys for Plaintiff and the Putative Class and Collective***

*admitted *pro hac vice*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that I electronically filed the foregoing document with the Clerk of Court using SM/ECF on **December 27, 2019**.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by SM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Filing.

/s/Michael J. Palitz
Michael J. Palitz

## <u>SERVICE LIST</u>

*Nicole Fidelio v. iMobile, LLC and iMobile USA, LLC*
**CASE NO.: 1:19-cv-10417-VB**
**United States District Court for the Southern District of New York**

Aaron N. Solomon, Esq.
Jaime Sanchez, Esq.
Michael Kaufman, Esq.
KAUFMAN DOLOWICH & VOLUCK LLP
135 Crossways Park Drive, Suite 201
Woodbury, NY 11797
Telephone: (516) 681-1100
Fax: (561) 681-1101
Email: asolomon@kdvlaw.com
Email: jsanchez@kdvlaw.com
Email: mkaufman@kdvlaw.com